### METCALF et al. v. MITCHELL, Collector.

(District Court, D. Massachusetts.   May 21, 1924.)

No. 2072.

1. **Internal revenue** <span>⊂⊃7</span>—**Standing of members of firm of consulting engineers as "employees" or "officers" exempt from excess profit tax.**

Members of a firm of consulting engineers were not employees or officers within War Revenue Act 1917, § 201 (Comp. St. 1918, § 6336⅛b), excepting certain persons from excess profits tax, in so far as their services were made use of as consultants by states or municipalities, but were "employees" or "officers" where they were appointed officers of a municipality or district under ordinance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé; Officer.]

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Internal revenue ⟨⇒1—Provision of water for general purposes of inhabitants of city or town not public purpose.**

Provision of water for general purposes of inhabitants of a city or town is not a public purpose and government has power to tax those engaged therein as against contention that it would interfere with sovereign powers of state or subdivision thereof.

**3. Internal revenue ⟨⇒7—Income of private persons arising from services rendered state taxable.**

Taxing of income of private persons, such as consulting engineers, arising from services rendered to a state in connection with sewerage systems does not so seriously interfere with governmental functions of state as to be unconstitutional.

At Law. Suit by Leonard Metcalf and others against John J. Mitchell, Collector. Partial recovery adjudged.

Philip Nichols, of Boston, Mass., for plaintiff.

Albert F. Welsh, Sp. Asst. U. S. Atty., of Boston, Mass., for defendant.

LOWELL, District Judge. [1] This is a suit to recover excess profit taxes paid under protest. The plaintiffs were members of a firm of consulting engineers, who advised various states, municipalities, and water and sewerage districts throughout the country as to the installation of waterworks and sewerage systems. The manner of their employment and their rate of compensation differed somewhat. They were consulted either on a specific problem, for which a fixed sum was paid, employed on a yearly salary or for compensation based on the amount of work done. In two cases, however, which will be referred to hereafter, their employment was on a different basis. The plaintiffs were assessed the sum of $1,259.26 for the year 1917 as excess profits on this kind of work. They paid under protest, and are now suing to recover. The statute then in force excepted various officers in the following words:

"This title shall apply to all trades or businesses of whatever description, whether continuously carried on or not, except—

"(a) In the case of officers and employees under the United States, or any state, territory, or the District of Columbia, or any local subdivision thereof, the compensation or fees received by them as such officers or employees." War Revenue Act of 1917, § 201 (Comp. St. 1918, § 6336⅝b).

It is contended by the plaintiffs that they were officers or employees within the meaning of the statute. I am of the opinion, however, that the officers or employees contemplated in the exception were regular employees of a state or subdivision thereof, and not persons whose services were made use of as consultants, and who were not in any sense a part of the regular force of such state or subdivision. U. S. v. Germaine, 99 U. S. 508, 25 L. Ed. 482; Shurburn v. Hooper, 40 Mich. 503.

[2] In two instances the plaintiffs were appointed regular officials of a subdivision of a state. Mr. Metcalf was chosen chief engineer of the Kennebec water district, which was established to provide a healthful water supply for the inhabitants of the district, and Mr. Eddy

was a member of the board of engineers of the North Shore sanitary district in Illinois, appointed under an ordinance for the purpose of protecting the waters of Lake Michigan from contamination. These two instances, in my opinion, come within the exception of the statute.

The further contention as to the greater part of the services rendered by the plaintiffs is that although the plaintiffs were not in terms excepted by the statute, the national government has no right under the Constitution to interfere with the sovereign powers of a state or subdivision thereof when they relate to a governmental function such as the preservation of the public health. In the present state of the law this question must be divided into two parts. In the first place as to the services rendered for water supply. While the provision of water for the extinguishment of fire is a public purpose (Tainter v. Worcester, 123 Mass. 311, 25 Am. Rep. 90; Brinkmeyer v. Evansville, 29 Ind. 187; Wheeler v. Cincinnati, 19 Ohio, 19, 2 Am. Rep. 368), the highest authority shows that the provision of water for the general purposes of the inhabitants of a city or town is not a public purpose. 2 Nichols, Eminent Domain (2d Ed.) p. 1382. As to the services, therefore, rendered in connection with the provision of water supply or the maintenance and repair of water systems, the government had power to tax, and there can be no recovery.

[3] There remains the question of the tax in connection with the services rendered for sewerage systems. The provision of a system of sewers has been held to be so connected with the public health as to be part of the governmental function of a municipality. Johnston v. District of Columbia, 118 U. S. 19, 6 Sup. Ct. 923, 30 L. Ed. 75; Child v. Boston, 4 Allen, 41, 51, 81 Am. Dec. 680. The interesting and delicate question remains whether as to these services the national government has the power to tax when they are rendered by persons not in the employ of the state or a subdivision thereof. It is earnestly and eloquently argued that to allow such a power of taxation would interfere with the sovereign power of the state to look out for the welfare of its inhabitants, and it is further insisted that, if such a tax can be levied, it might be made at such a high rate as to practically destroy the power of the state to carry on its governmental functions. See Flint v. Stone-Tracey Co., 220 U. S. 108, 157, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Bettman v. Warwick, 108 Fed. 46, 47 C. C. A. 185. But it is of the utmost importance that the power of taxation of the national government should not be unduly restricted. See So. Carolina v. U. S., 199 U. S. 437, 457, 26 Sup. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737. And I am of the opinion that the taxing of the income of private persons, although arising from services rendered to a state, does not so seriously interfere with the governmental functions of the state as to be unconstitutional.

It was ingeniously argued at the bar that the services rendered in many instances by the plaintiff were the same services as those of city or town engineers; that such city or town engineers could not be taxed under the statute, and that therefore the plaintiffs could not be taxed. It was suggested that the statute could be complied with by the simple expedient of making the plaintiffs in every case public officials. This

was not done, however, except in the instances which I have mentioned. If the appointment were made clearly as a subterfuge, in order to defeat the tax it would not be valid, and the true distinction seems to be that already indicated—that states or public officials thereof cannot be taxed, while private persons, though rendering similar services, may be taxed.

The plaintiffs may recover the amount of the tax paid by them on the excess profits arising from their services in connection with the Kennebec water district and the North Shore sanitary district, but are not entitled to recover for anything else.