### FRIEBELE v. UNITED STATES.
### No. L–5480.

District Court, D. New Jersey.
Sept. 20, 1937.

Ellis L. Pierson, of Trenton, N. J., and Frederick Schwertner, of Washington, D. C., for plaintiff.

John J. Quinn, of Red Bank, N. J., and Arthur L. Jacobs, of Washington, D. C., for the United States.

FORMAN, District Judge.

On August 16, 1923, the plaintiff acquired at a cost of $500 certificate No. 204 for 500 profit-sharing interests of the Texas Development Company, which was organized in April, 1923, pursuant to a declaration of trust, for the purpose of exploiting an oil lease. On or about October 10, 1924, the plaintiff also acquired certificate No. 316 for 2,000 profit-sharing interests of the said Texas Development Company for $300. These profit-sharing interests were without par or face value. The Texas Development Company operated at a great loss, and

the plaintiff's investment in said profit-sharing interest proved wholly unprofitable.

In May, 1935, the Commissioner of Internal Revenue assessed against the plaintiff documentary stamp taxes in the amount of $1,593.32 on the transfer or sale of 39,833 profit-sharing interests in the Texas Development Company on November 18, 1932. The tax was computed at the rate of four cents per interest. Included in these 39,833 profit-sharing interests were the 2,500 represented by the aforementioned Certificates Nos. 204 and 316, which plaintiff had sold for $25.

On October 9, 1935, the plaintiff paid $100 in partial payment of this assessment as the tax on the sale of Certificates Nos. 204 and 316, computed at the rate of a four-cent tax on the transfer or sale on each of the 2,500 profit-sharing interests. The balance of this assessment and the tax liability for that year are still unpaid.

On or about October 30, 1935, the plaintiff duly filed a claim for refund in the sum of $99.92, being a part of the aforesaid payment of $100, in which the grounds for refund and facts in support thereof were set forth with great particularity.

On January 31, 1936, the Commissioner of Internal Revenue disallowed the plaintiff's claim for refund in its entirety, and the plaintiff instituted suit in this court on February 10, 1936.

The defendant moves to dismiss on the ground that this court does not have jurisdiction inasmuch as our system of taxation makes it imperative that the taxpayer be required to pay his *entire* liability first and litigate later. In other words, the defendant would have the plaintiff pay the entire assessment which amounts to $1,593.32 as a condition precedent to his right to sue for a refund.

The only inquiry here is whether or not plaintiff should have paid the entire assessment before beginning suit.

■ Stamp taxes accrue upon each and every sale or transfer of shares of stock. The Commissioner may, however, embody in one assessment stamp taxes accruing over a period of years involving many sales of shares of stock, just as he did against the plaintiff herein. It is admitted by the defendant's counsel that: "Ordinarily, the documentary stamp tax here involved is paid by the purchase and affixing of appropriate stamps. See Treasury Regulations 71, Article 95. And it may well be that separate suits for the tax so paid might be maintained after the tax has been paid."

Every pertinent case cited by the defendant involved a controversy wherein either income taxes, estate taxes, or injunctions to restrain collection of taxes were concerned. In the latter group of cases it is clear that there can be no relief in equity until the legal remedies are exhausted. Consequently, the courts said complainant must pay the assessment first and then seek his legal relief by way of refund. None of those cases shed any light upon the case at bar, because it is not stated whether the entire tax should be paid, or only a portion of the entire assessment, if the tax is of a divisible nature. Ordinarily one must pay and sue for recovery in the law court before he is entitled to consideration. But how much must he pay?

Income taxes and estate taxes flow from calculations involving complicated considerations of credits, exemptions, etc. The resulting tax has been influenced by and reflects these considerations. They are not naturally separable as in the case of the stamp tax. It is a wise law that governs their prepayment before suit can be brought. Otherwise, the power of collection of taxes would be continuously impeded and rendered practically useless. But in the case of these separable items the issue is clear-cut. There can be no complicated questions of credits, exemptions, and the like. It is simply an issue of whether or not the stamp should be applied and in what amount.

■ Therefore, the cases cited by either the plaintiff or the defendant do not throw specific light upon the separability of payments where stamp taxes are involved. It appears that as a matter of convenience to the collecting official he is authorized to assess them in bulk where it is discovered that the stamps themselves were not affixed to the documents in the manner prescribed by law. However, this does not make the amount due for stamps for any given document any part of the payment due for stamps for another document. It is clearly a divisible assessment.

The court is of the opinion that the total assessment against the plaintiff, that is, $1,593.32, is the aggregate of several, separate, and independent taxable items. The payment of any of these individual items would constitute a payment of the entirety in so far as that particular item is concerned, and would justify a claim for

a refund thereof. Incidentally, there is nothing to prevent the government from pursuing its remedies to satisfy execution for the balance of alleged taxes remaining unpaid.

Under these circumstances the defendant's motion to dismiss the complaint will be denied.